DAIDONE v. FEDERAL BUREAU OF PRISONS et al
Case 1:05-cv-04738-JHR    Document 2    Filed 10/11/2005    Page 1 of 12
Doc. 2

**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

DANIEL DAIDONE,                          :
                                     Civil Action No. 05-4738 (JHR)
           Petitioner,     :

           v.                     :     **OPINION**

FEDERAL BUREAU OF PRISONS,     :
et al.,
           Respondents.    :


**APPEARANCES:**

Petitioner <u>pro</u> <u>se</u>
Daniel Daidone
#40447-050
F.C.I. Fort Dix Camp
P.O. Box 1000
Fort Dix, NJ 08640


**RODRIGUEZ,** District Judge

     Petitioner Daniel Daidone, a prisoner currently confined at

the Federal Correctional Institution at Fort Dix, New Jersey, has

submitted a petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2241.[1]  The Respondents are the Federal Bureau of

Prisons, Harley G. Lappin, and Warden John Nash.

---

    [1] Section 2241 provides in relevant part:

    (a) Writs of habeas corpus may be granted by the
    Supreme Court, any justice thereof, the district courts
    and any circuit judge within their respective
    jurisdictions.
    (c) The writ of habeas corpus shall not extend to a
    prisoner unless-- ... (3) He is in custody in violation
    of the Constitution or laws or treaties of the United
    States ... .

Dockets.Justia.com

Because it appears from a review of the Petition that Petitioner is not entitled to issuance of the writ, this Court will dismiss the Petition.  See 28 U.S.C. § 2243.

## I.   BACKGROUND

Petitioner was sentenced in this Court, on December 16, 2003, to a term of imprisonment of 33 months, pursuant to which he currently is confined.  Petitioner's projected release date is July 5, 2006.  Petitioner has been advised that his Pre-Release Preparation Date, the date he is eligible for pre-release transfer to a Community Corrections Center, is April 10, 2006.

Petitioner contends that the Bureau of Prisons' policy, as reflected in the Memorandum Opinion of the Department of Justice's Office of Legal Counsel, regarding pre-release transfer to a CCC, is "illegal."  The Court construes this as a challenge to the December 2002 policy of the Bureau of Prisons.  Petitioner requests that the Court order Respondents to immediately consider him for up to six months pre-release placement in a CCC.

Petitioner contends that exhaustion of administrative remedies would be futile.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

United States Code Title 28, Section 2243 provides in relevant part as follows:

> A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be

granted, unless it appears from the application that the applicant or person detained is not entitled thereto.

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).  Nevertheless, a federal district court can dismiss a habeas corpus petition if it appears from the face of the petition that the petitioner is not entitled to relief.  See Lonchar v. Thomas, 517 U.S. 314, 320 (1996); Siers v. Ryan, 773 F.2d 37, 45 (3d Cir. 1985), cert. denied, 490 U.S. 1025 (1989). See also 28 U.S.C. §§ 2243, 2255.

III.    ANALYSIS

A.    Jurisdiction

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 2241(a) and (c) in that Petitioner challenges his custody, in this district, under the authority of the United States and in violation of the laws of the United States.  See United States v. Ferri, 686 F.2d 147, 158 (3d Cir. 1982), cert. denied, 459 U.S. 1211 (1983) (claims attacking the

3

execution of a petitioner's sentence are properly brought under

28 U.S.C. § 2241). See also Kingsley v. Bureau of Prisons, 937

F.2d 26, 30 (2d Cir. 1991) ("challenges to the length,

appropriateness or conditions of confinement are properly brought

under 28 U.S.C. § 2241").

Indeed, "Section 2241 of title 28 has long been recognized

as the basis for challenging the execution of the sentence of a

person in federal custody or a person sentenced for violating a

federal criminal statute." Zucker v. Menifee, 2004 WL 102779, *3

(S.D.N.Y. January 21, 2004) (citing Maleng v. Cook, 490 U.S. 488,

493 (1989) (per curiam)). See also Miller v. Federal Bureau of

Prisons, 2005 WL 2248797 *1, n.2 (3d Cir. Sept. 16, 2005)

(unpubl.) (federal district court has jurisdiction over habeas

petition challenging Bureau of Prisons policy regarding pre-

release transfer to CCC).

B.    Exhaustion

Although 28 U.S.C. § 2241 contains no statutory exhaustion

requirement, a federal prisoner ordinarily may not bring a

petition for writ of habeas corpus under 28 U.S.C. § 2241,

challenging the execution of his sentence, until he has exhausted

all available administrative remedies. See, e.g., Callwood v.

Enos, 230 F.3d 627, 634 (3d Cir. 2000). The exhaustion doctrine

promotes a number of desirable goals including filtering out

frivolous claims and developing a full and complete record for

trial purposes; nevertheless, exhaustion of administrative remedies is not required where exhaustion would not effectuate these goals. See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000).

Petitioner does not allege that he has exhausted his administrative remedies, see 28 C.F.R. § 542.10 et seq. Here, there is no need to exhaust in order to develop a factual record, nor does this matter require application of the agency's particular expertise. Petitioner does not challenge the application of the BOP's policies to him, but instead challenges whether the policy accurately implements the statute pursuant to which it was promulgated. This is a question within the expertise of the courts. See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 n.9 (1984) ("The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent.").

C.    Statutory Language and the Changes in BOP policy

Federal law imposes upon the Bureau of Prisons the obligation and discretion to designate the place of a prisoner's imprisonment, as follows:

> (b) Place of imprisonment.--The Bureau of Prisons shall
> designate the place of the prisoners's imprisonment.
> The Bureau may designate any available penal or
> correctional facility that meets minimum standards of

health and habitability established by the Bureau,
whether maintained by the Federal Government or
otherwise and whether within or without the judicial
district in which the person was convicted, that the
Bureau determines to be appropriate and suitable,
considering -

     (1) the resources of the facility contemplated;

     (2) the nature and circumstances of the offense;

     (3) the history and characteristics of the prisoner;

     (4) any statement by the court that imposed the
sentence--

       (A) concerning the purposes for which the
sentence to imprisonment was determined to be
warranted; or

       (B) recommending a type of penal or
correctional facility as appropriate; and

     (5) any pertinent policy statement issued by the
Sentencing Commission pursuant to section 994(a)(2) of
Title 28.

     In designating the place of imprisonment or making
transfers under this subsection, there shall be no
favoritism given to prisoners of high social or
economic status.  The Bureau may at any time, having
regard for the same matters, direct the transfer of a
prisoner from one penal or correctional facility to
another.

18 U.S.C. § 3621(b).

    In addition, federal law provides that prisoners shall, to

the extent practicable, serve the last portion of their

imprisonment under conditions that will facilitate their

transition from prison life to the community.

     (c) Pre-release custody.--The Bureau of Prisons shall,
to the extent practicable, assure that a prisoner
serving a term of imprisonment spends a reasonable

part, not to exceed six months, of the last 10 per
centum of the term to be served under conditions that
will afford the prisoner a reasonable opportunity to
adjust to and prepare for the prisoner's re-entry into
the community.   ...

18 U.S.C. § 3624(c).

In implementing pre-release custody programming under this
statute, the BOP has traditionally used a variety of community-
based programs, including CCCs, Comprehensive Sanctions Centers
("CSCs"), the Mothers and Infants Together ("MINT") program, and
Intensive Confinement Centers ("ICCs"), as well as home
confinement.  BOP Program Statement ("PS") 7310.04, Community
Corrections Center (CCC) Utilization and Transfer Procedure (Dec.
16, 1999), provides guidance to BOP staff as to the
administration of pre-release programs generally.

Before December 2002, the BOP interpreted these statutes to
allow the BOP to designate inmates to serve any or all of their
terms of imprisonment in Community Corrections Centers.  The BOP
also had a long-standing policy of considering prisoners for up
to 180 days pre-release placement in a CCC, regardless of the
length of sentence.

On December 13, 2002, the Office of Legal Counsel of the
United States Department of Justice prepared a Memorandum Opinion
for Deputy Attorney General Larry D. Thompson on the question
"whether the BOP has general authority, either upon the
recommendation of the sentencing judge or otherwise, to place [a

federal offender whom the BOP deems to be low-risk and nonviolent and who has received a short sentence of imprisonment] directly in community confinement at the outset of his sentence or to transfer him from prison to community confinement during the course of his sentence."

The Office of Legal Counsel ("OLC") began its analysis with a review of Federal Sentencing Guidelines provisions addressing imprisonment and community confinement and federal court opinions concluding that community confinement does not constitute "imprisonment" for purposes of these Sentencing Guidelines provisions.  The OLC progressed from this analysis to a determination that a community corrections center ("CCC") can not constitute a "penal or correctional facility" that may serve as a place of imprisonment within the meaning of § 3621(b).  If a CCC were considered a place of imprisonment within the meaning of § 3621(b), the OLC reasoned, "then the time limitation in section 3624(c) on BOP authority to transfer a prisoner to a non-prison site – i.e., for a period, not to exceed six months, of the last 10% of the term of his sentence – would be rendered null with respect to community confinement."  The OLC concluded that the practice, pursuant to the BOP's interpretation of § 3621(b), of placing certain prisoners in CCC for a period longer than that mandated by the specific language of § 3624(c) was not lawful.

Based upon this OLC Memorandum Opinion, on December 16, 2002, Deputy Attorney General Larry D. Thompson sent a Memorandum to BOP Director Kathleen Hawk Sawyer advising her the that BOP's prior interpretation of § 3621(b) as including CCCs is unlawful and directing the BOP to cease placement of federal prisoners in CCCs except for the lesser of six months or ten percent of the sentence imposed on the offender.

On December 20, 2002, the BOP adopted the OLC legal opinion in a memorandum mandating that "Pre-release programming CCC designations are limited in duration to the last 10% of the prison sentence, not to exceed six months." This "ten-percent rule" represented a reversal of long-standing BOP policy to consider prisoners for pre-release CCC placement for up to the final six months of their sentences (the "six-months rule"), regardless of the total term of imprisonment. See, e.g., Schorr v. Menifee, 2004 WL 1320898, *2 (S.D.N.Y. June 14, 2004) (and cases cited therein). The new ten-percent rule was instituted without notice to the public and was not reflected in any BOP Program Statement. The new ten-percent rule generated a wave of litigation from federal prisoners seeking its invalidation on various grounds; federal courts addressing the issues raised in this litigation were sharply divided as to the validity of the new policy. Id. at *3 (collecting cases). See also Miranda v. Miner, Civil Action No. 04-2590(JBS) (D.N.J. Aug. 20, 2004).

Responding to this division, on August 18, 2004, the BOP published proposed regulations regarding placement in CCCs or home confinement. See 69 Fed.Reg. 51213 (2004). Because numerous U.S. District Courts had held that a CCC is a "penal or correctional facility" within the meaning of § 3621(b) and that the BOP had discretion under 18 U.S.C. § 3621(b) to place offenders, sentenced to a term of imprisonment, into CCCs at any time during their imprisonment, the proposed regulations reflected an acquiescence in that statutory construction and a determination how to exercise that discretion. Specifically, the BOP determined to exercise its discretion categorically to limit its designation of inmates to community confinement[2] only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months, except where statutorily-created programs authorize greater periods of community confinement.

Following a period for comment, the BOP issued final regulations on January 10, 2005, to become effective on February 14, 2005.[3] 70 Fed. Reg. 1659 (2005). With one minor change not

---

[2] "Community confinement" is defined to include community corrections centers (also known as "halfway houses") and home confinement.

[3] During the comment period, two U.S. Courts of Appeals issued opinions finding that § 3621(b) authorizes the Bureau to place inmates in CCCs at any time during service of their prison sentence and that this authority is not limited by § 3624(c) to the last ten percent of the sentence being served. See Elwood v.

relevant here, the BOP adopted the proposed rules as final.  See

28 C.F.R. §§ 570.20, 570.21.

D.    Petitioner's Claims

The promulgation of 28 U.S.C. §§ 570.20 and 570.21 has

mooted Petitioner's challenge to the December 2002 policy.  See

Pimental v. Gonzalez, 367 F.Supp.2d 365, 372 (E.D.N.Y. May 3,

2005).  Thus, Plaintiff is not entitled to relief on his claim

challenging the December 2002 policy.

Petitioner does not assert any specific challenge to the new

regulations in his Petition; indeed, he does not mention the new

regulations at all.[4]  While this Court is bound to construe a pro

se Petitioner's allegations liberally, this Court cannot insert

into the Petition a claim that is not reflected there at all.

To the extent the Petition could be construed as asserting

that Petitioner has an absolute right under § 3624(c) to spend

the last six months of his term of imprisonment in a community

corrections center, such a claim is meritless.  Sections 3621(b)

and 3624(c) do not require pre-release placement in a CCC for any

specified period of time or, indeed, for any period of time.

Section 3624(c) requires only that pre-release custody "be served

_____

Jeter, 386 F.3d 842 (8th Cir. 2004) and Goldings v. Winn, 383
F.3d 17 (1st Cir. 2004).

[4] Because of the disposition of this matter, this Court
expresses no opinion as to the validity of the new regulations or
of their application, if any, to Petitioner.

11

under conditions that will afford the prisoner a reasonable

opportunity to adjust to and prepare for the prisoner's re-entry

into the community."  Under the statute, this transitional pre-

release custody need not take the form of CCC placement.  See,

e.g., Prows v. FBOP, 981 F.2d 466 (10th Cir. 1992), cert. denied,

510 U.S. 830 (1993); United States v. Laughlin, 933 F.2d 786 (9th

Cir. 1991); Gambino v. Gerlinski, 96 F.Supp.2d 456 (M.D. Pa.

2000), aff'd, 216 F.3d 1075 (3d Cir. 2000); Miranda v. Miner,

Civil Action No. 04-2590 (JBS) (D.N.J. Aug. 20, 2004).  Thus,

Petitioner is not entitled directly under § 3624(c) to serve the

last six months, or any portion, of his term of imprisonment in a

CCC.

### III.  CONCLUSION

For the reasons set forth above, the Petition must be

dismissed.  An appropriate order follows.

Joseph H. Rodriguez
United States District Judge

Dated: October 11, 2005